UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Stephen A. Emery, | Court File No. 25-4623 |
| Plaintiff, | |
| v. | COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| Steve Simon, in his official capacity as Minnesota Secretary of State, | |
| Defendant. | |

Plaintiff, Stephen A. Emery, for his Complaint against Defendant Steve Simon, in his official capacity as Minnesota Secretary of State, alleges as follows:

INTRODUCTION

1. This is a civil rights action under 42 U.S.C. § 1983 challenging Minnesota Statute § 204B.36, subdivision 5, as unconstitutional under the Titles of Nobility Clauses of the United States Constitution, U.S. Const. art. I, §§ 9–10, as applied to judicial elections in Minnesota.

2. Minnesota Statute § 204B.36, subd. 5 requires the word "incumbent" to be printed after the name of a judicial candidate who is a "chief justice, associate justice, or judge" and who is a candidate "to succeed again."

1

3. By using the ballot itself to confer a government-created electoral advantage on sitting judges, and by correspondingly burdening non-incumbent candidates and voters, Minnesota has created an official, state-conferred status distinction that violates the federal constitutional prohibition on titles of nobility and on government-created "ignobility."

4. Plaintiff is a Minnesota attorney who has previously sought judicial office and intends to be a candidate for Justice of the Minnesota Supreme Court in the 2026 primary and general elections. If Minn. Stat. § 204B.36, subd. 5 is enforced in those elections, Plaintiff will be required to run on a ballot that expressly labels his judicial opponents as "incumbent" while denying him that designation, thereby skewing the election in favor of a government-preferred class.

## JURISDICTION AND VENUE

5. This action arises under the United States Constitution and laws of the United States, including U.S. Const. art. I, §§ 9–10 and 42 U.S.C. § 1983. This Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)–(4).

6. Plaintiff seeks declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201–2202.

7. Venue lies in this District under 28 U.S.C. § 1391(b) because Defendant performs his official duties in Minnesota, the challenged statute is administered in Minnesota, and a substantial part of the events giving rise to Plaintiff's claims occurred and will occur in this District.

## PARTIES

8. Plaintiff Stephen A. Emery is a resident of Yellow Medicine County, Minnesota, residing at 4778 345th Avenue, Montevideo, Minnesota 56265. He is a licensed attorney (Attorney Registration No. 263291). He has previously been a candidate for the position of Justice of the Minnesota Supreme Court and intends to be a candidate for the position of Justice of the Minnesota Supreme Court in the 2026 primary and general elections.

9. Defendant Steve Simon is the Minnesota Secretary of State. He is the chief election official of the State of Minnesota and is responsible for overseeing election-related procedures, including the preparation and certification of official ballots for statewide elections. He is sued in his official capacity only.

## STATUTORY BACKGROUND

10. Minnesota Statute § 204B.36 governs the form of ballots in Minnesota elections. Subdivision 5 provides, in relevant part, that if a "chief justice, associate

justice, or judge is a candidate to succeed again, the word 'incumbent' shall be printed after that judge's name as a candidate."

11. Minnesota Statute § 204B.35, subd. 2 provides that "[a]n individual's name as it appears on the ballot shall not give the incumbent or any candidate an advantage over an opponent, including words descriptive of the candidate's occupation, qualifications, principles, or opinions."

12. Minnesota Statute § 204B.36, subd. 5 thus mandates a ballot label for judicial candidates—"incumbent"—that, by its very nature and as understood in law and practice, confers a material electoral advantage on incumbents over their opponents, contrary to the general anti-advantage policy codified in § 204B.35, subd. 2.

## FACTUAL ALLEGATIONS

13. Plaintiff has been a candidate for judicial office in Minnesota in 2024 and will be a candidate for the office of Justice of the Minnesota Supreme Court in the 2026 primary and general elections.

14. Elections scholarship, empirical research, and common political experience confirm that incumbency provides a substantial electoral advantage. Studies report

4

elevated success rates for incumbents, including in state-level elections, and recognize that incumbents enjoy name recognition, institutional support, and other advantages that translate into higher reelection rates.

15. In Minnesota judicial elections, incumbency is particularly powerful. Judicial incumbents who stand for reelection in Minnesota historically have an extremely high—effectively near-perfect—reelection rate, and nearly all such incumbents were first appointed to office so they never have had to win an election without the government imprimatur.

16. By requiring the term "incumbent" to appear after a judge's name on the official election ballot, the State uses the machinery of government to highlight and endorse that candidate's status. The ballot label delivers, at government expense, a central component of the incumbent's campaign message: that the incumbent already holds judicial office and has experience in the specific position sought.

17. The "incumbent" designation enables sitting judges to promote their status to every voter, on the official ballot itself, without cost to themselves, and in a way that non-incumbent candidates cannot match. This state-conferred advantage functions as a government-provided benefit or privilege for incumbents.

18. At the same time, the ballot's designation of incumbents implicitly brands non-incumbent candidates, including Plaintiff, as outsiders who have not been

"vetted" or approved through prior appointment or election to that office. The State's ballot thus operates as both a title of superiority for incumbents and a badge of inferiority—or "ignobility"—for challengers.

19. This government-created hierarchy of electoral status is not tied to any disqualifying conduct by challengers and is not necessary to inform voters of basic ballot mechanics. Rather, it is an official, state-imposed distinction of rank and preference among candidates for public office.

20. If Minn. Stat. § 204B.36, subd. 5 is applied in the 2026 primary and general elections, Plaintiff will appear on a ballot where his judicial opponents are expressly labeled "incumbent," while he is not. That ballot-labeling scheme will materially and unlawfully impose a disadvantage on him as a candidate and distort the electoral choice presented to voters.

21. Plaintiff intends to participate actively in the 2026 election cycle and to campaign for judicial office. As a result, the enforcement of § 204B.36, subd. 5 will cause him concrete and particularized injury-in-fact that is fairly traceable to Defendant's administration of the statute and likely to be redressed by the declaratory and injunctive relief sought in this action.

22. Based on plaintiff's understanding and experience as a citizen, a voter, a person who has been involved in Minnesota's caucuses, a person who has donated to and assisted in campaigns of persons who have stood for elective office, and

being a candidate in other elections, incumbency provides a tremendous electoral advantage to the officeholder. An "incumbent" label on the ballot conveys to voters that the labeled candidate already holds the judicial office at issue, previously has been selected for that office, and possesses a form of government-endorsed status and experience that challengers do not have.

23.    The effect of the incumbency provision producing a 100% reelection rate discourages potential candidates to standing for election and, due to a 100% failure rate by candidates who have stood for election, is a hinderance to fund raising and volunteer participation in a judicial campaign, and has been a hinderance to the Plaintiff's fundraising and my campaign building through volunteers, which is a useful component of a successful campaign, because people are less likely to donate to causes that are highly likely to fail or volunteer for such causes.

24.    Prohibiting a challenge to the incumbency designation until after filing in June and a decision in July, and maybe later due to appeals, even if successful, diminishes meaningful fundraising and support-building based on the prospect of an unbiased election because the election cycle has mostly passed, including the vital caucuses, which are to occur in a little over a month from now. Just like fundraising, the 100% failure rate of candidates who have stood for election, arguably due to the incumbency designation, diminishes support from people who

otherwise would volunteer, including raising support during the vital caucus process.

CLAIMS FOR RELIEF

COUNT I

VIOLATION OF THE TITLES OF NOBILITY CLAUSES

(U.S. CONST. ART. I, §§ 9–10; ENFORCEABLE VIA 42 U.S.C. § 1983)

(AS APPLIED TO JUDICIAL ELECTIONS)

25. Plaintiff realleges and incorporates by reference paragraphs 1–21 as if fully set forth herein.

26. Article I, Section 9, Clause 8 of the United States Constitution provides that "[n]o Title of Nobility shall be granted by the United States." Article I, Section 10, Clause 1 provides that "[n]o State shall . . . grant any Title of Nobility."

27. The Titles of Nobility Clauses embody the Founders' categorical rejection of government-created orders of superior and inferior status, whether hereditary or otherwise, and were intended to prohibit the use of governmental power to bestow special privileges, honors, or emoluments on favored persons or classes, or to impose badges of ignobility on disfavored persons or classes.

28. Historical and judicial authorities have recognized that these Clauses reach not only formal hereditary titles but also government practices that create state-endorsed classes of superior and inferior citizens by conferring unique privileges or stigmas. See, e.g., Horst v. Moses, 48 Ala. 129 (1872) (invalidating law granting exclusive privileges as contravening anti-nobility principle); In re Application of Jama, 272 N.Y.S.2d 677 (N.Y. Civ. Ct. 1966) (relying on Titles of Nobility Clauses to deny self-ennobling name change); Eskra v. Morton, 524 F.2d 9 (7th Cir. 1975) (recognizing anti-nobility concern in rejecting official stigma as "badge of ignobility"); Zobel v. Williams, 457 U.S. 55 (1982) (concurring Justices invoking anti-nobility principle to criticize degrees of citizenship based on length of residency); Fullilove v. Klutznick, 448 U.S. 448 (1980) (Stewart, J., dissenting) (warning against government-created privileges as contrary to anti-nobility tradition).

29. Minnesota Statute § 204B.36, subd. 5, as administered by Defendant, uses the official election ballot to confer a special advantage—rooted in status as a sitting judge—on judicial incumbents seeking reelection, while simultaneously consigning non-incumbent candidates and voters to a position of relative inferiority.

30. The "incumbent" ballot label operates as an official title of governmental favor and distinction that is attached to the person of the sitting judge and that

carries with it material benefits, including increased likelihood of reelection, enhanced public perception, and reduced campaign costs. It is a state-conferred privilege based on status, not merit as adjudicated by voters in a fair contest.

31. At the same time, the designation functions as a government-imposed badge of ignobility upon non-incumbent candidates, including Plaintiff, by signaling that they have not been previously elevated to judicial office and by effectively labeling them as unvetted outsiders.

32. The Titles of Nobility Clauses do not permit the State to use the machinery of government, and especially the ballot itself, to create and entrench a favored class of office-holders and a disfavored class of challengers through official status designations that go beyond the neutral identification of candidates.

33. By enforcing Minn. Stat. § 204B.36, subd. 5 in judicial elections, Defendant, acting under color of state law, deprives Plaintiff of rights secured by the Titles of Nobility Clauses of the United States Constitution, in violation of 42 U.S.C. § 1983.

34. Unless this Court declares § 204B.36, subd. 5 unconstitutional as applied to judicial elections and enjoins its enforcement, Plaintiff will continue to face elections in which the State, through the official ballot, bestows a title-like advantage on his incumbent opponents and imposes a corresponding badge of inferiority on him.

COUNT 2

VIOLATION OF MINNESOTA STATUTE 204B.35(2), AS THE INCUMBENT DESIGNATION UNDER § 204B.36, subd. 5 IS VIEWED WITHIN THE MEANING OF THE TITLE OF NOBILITY CLAUSES

(U.S. CONST. ART. I, §§ 9–10; ENFORCEABLE VIA 42 U.S.C. § 1983)

(AS APPLIED TO JUDICIAL ELECTIONS)

35. Plaintiff realleges and incorporates by reference paragraphs 1–31 as if fully set forth herein.

36. Printing the word "incumbent" after a judge's name on a ballot as a candidate, if a chief justice, associate justice, or judge is a candidate to succeed again, as stated under Minnesota Statute 204B.36(5) gives the incumbent "candidate an advantage over an opponent, including words descriptive of the candidate's occupation, qualifications, principles, or opinions," within the meaning of Minnesota Statute 204B.35(2), as the designation is viewed within the meaning of the Title of Nobility Clauses. Therefore, 204B.36(5) is in irreconcilable conflict with 204B.35(2) and for Minnesota Statute 204B.36(5) to be declared invalid.

## IRREPARABLE HARM

37. The loss of constitutional rights, even for minimal periods of time, constitutes irreparable injury. The enforcement of § 204B.36, subd. 5 in upcoming elections will irreparably harm Plaintiff by forcing him to compete in a government-skewed election that violates the Titles of Nobility Clauses.

38. Monetary damages cannot adequately remedy these harms. Once an election is conducted under an unconstitutional ballot design, the distortion of the electoral process and the public's perception of the candidates cannot be fully undone.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and grant the following relief:

A. A declaration that Minnesota Statute § 204B.36, subd. 5, as applied to judicial elections in Minnesota, violates the Titles of Nobility Clauses of the United States Constitution, U.S. Const. art. I, §§ 9–10, and is unconstitutional on its face and/or as applied to Plaintiff;

B. An injunction prohibiting Defendant, his officers, agents, and employees, and all persons acting in concert with them, from printing, causing to be printed, or permitting to be printed the word "incumbent" after any judicial candidate's name on any official ballot for any primary or general election in Minnesota;

C.   An order directing that the official ballots for the 2026 primary and general elections list all judicial candidates without any "incumbent" designation;

D.   An award of Plaintiff's costs of suit and attorney fees as permitted by law; and

E.   Such other and further relief as the Court deems just and proper.

Dated: December 8, 2025

I declare under penalty of perjury that the foregoing is true and correct.

Respectfully submitted,

*Stephen Emery*
_____

Stephen A. Emery
Plaintiff
4778 345th Avenue
Montevideo, MN 56265
320.889.1820
stephenallenemery@hotmail.com

Attorney Reg. No. 263291